IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| WILLIAM W. LITTLE, II, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 5:14–cv–00060 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| DOMINION TRANSMISSION, INC., | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Defendant Dominion Transmission, Inc., a natural gas company, wants to build a new pipeline through Virginia. The proposed route runs across property owned by plaintiffs William W. Little, II, and Wendy M. Little. To determine whether the property is suitable for the project, Dominion intends to enter and conduct a survey, in accordance with Virginia Code § 56-49.01. Seeking to prevent Dominion from entering the property, the Littles filed this action, alleging that Dominion's entry would be a trespass, and that § 56-49.01 is unconstitutionally vague and thus void.

Dominion now moves to dismiss the Littles' verified complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Commonwealth of Virginia, which has intervened to defend the constitutionality of § 56-49.01, also urges dismissal. For the following reasons, the court concludes that the Littles fail to state a trespass or vagueness claim. It will therefore grant Dominion's motion and dismiss the Littles' complaint.

## I. BACKGROUND

The Littles own property in Augusta County, Virginia, which they use as their primary residence. (Dkt. No. 1-1 at 3.)[1] On August 12, 2014, they received a letter from Dominion, informing them that the company desires to construct a new pipeline (now known as the Atlantic Coast Pipeline) through Virginia and that their property is located within the proposed route. (*Id.* at 2, 11.) To verify the suitability of the property for the project, Dominion asked for the Littles' written permission to enter and conduct a survey. (*Id.* at 2, 11–12.) It stated that it planned to begin the survey "on or about August 27, 2014." (*Id.* at 11.) Enclosed with the letter was a summary of the survey process. (*Id.* at 11, 17–18.)

Roughly a month and a half later, on September 25, 2014, the Littles sent a letter to Dominion, denying the company's request to enter their property. (*Id.* at 3, 13–14.) They further warned Dominion that "NO TRESPASSING IS ALLOWED" and that any "person caught on [the property] following this notice will be physically ejected and a request will be made to local law enforcement for that person's arrest." (*Id.* at 2, 13.)

On October 10, 2014, Dominion sent another letter to the Littles, this time giving them notice that, although the company has not received written permission to enter their property, it nonetheless "intends to enter upon [the property] in order to perform certain surveys and studies." (*Id.* at 2, 16.) It stated that, as a natural gas company, it is "authorize[d] . . . to enter upon property, without permission," for such purposes under § 56-49.01 (*id.* at 16), which provides in full:

---

[1] The facts recited in this background section and relied upon below are derived from the Littles' verified complaint and documents incorporated into or attached to the complaint. (Dkt. No. 1-1 at 2–33.) Consistent with the governing standard of review under Federal Rule of Civil Procedure 12(b)(6), the court accepts the Littles' factual allegations as true and construes them in the light most favorable to the Littles. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010).

2

A. Any firm, corporation, company, or partnership, organized for the bona fide purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a,[2] as amended, may make such examinations, tests, hand auger borings, appraisals, and surveys for its proposed line or location of its works as are necessary (i) to satisfy any regulatory requirements and (ii) for the selection of the most advantageous location or route, the improvement or straightening of its line or works, changes of location or construction, or providing additional facilities, and for such purposes, by its duly authorized officers, agents, or employees, may enter upon any property without the written permission of its owner if (a) the natural gas company has requested the owner's permission to inspect the property as provided in subsection B, (b) the owner's written permission is not received prior to the date entry is proposed, and (c) the natural gas company has given the owner notice of intent to enter as provided in subsection C. A natural gas company may use motor vehicles, self-propelled machinery, and power equipment on property only after receiving the permission of the landowner or his agent.

B. A request for permission to inspect shall (i) be sent to the owner by certified mail, (ii) set forth the date such inspection is proposed to be made, and (iii) be made not less than 15 days prior to the date of the proposed inspection.

C. Notice of intent to enter shall (i) be sent to the owner by certified mail, (ii) set forth the date of the intended entry, and (iii) be made not less than 15 days prior to the date of mailing of the notice of intent to enter.

D. Any entry authorized by this section shall not be deemed a trespass. The natural gas company shall make reimbursement for any actual damages resulting from such entry. Nothing in this section shall impair or limit any right of a natural gas company obtained by (i) the power of eminent domain, (ii) any easement granted by the landowner or his predecessor in title, or (iii) any right-of-way agreement, lease or other agreement by and between a natural gas company and a landowner or their predecessors in title or interest.

Va. Code Ann. § 56-49.01.

Dominion further explained in its October 10, 2014 letter that the survey process will consist of several steps. (Dkt. No. 1-1 at 16.) First, "a contract survey crew" will mark the anticipated right of way. (*Id.*) Then "[a] traditional survey crew" will locate the proposed route using "transits and other surveying equipment." (*Id.*) And lastly, "technicians . . . will study the

---

[2] Natural gas companies are federally regulated pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq*. The Littles do not dispute that Dominion is a natural gas company as defined in § 717a of the Act.

proposed route for any historical or archeological significance, endangered species, soil types, and other similar conditions." (*Id.*)

"During this process," Dominion continued, "there may be very minor earth disturbance"—which "will be promptly refilled and repaired"—and the "surveyors may . . . need to clear pathways through brush and other growth." (*Id.*) Dominion also stated that it will reimburse the Littles for "any actual damage" that their property sustains as a result of "the survey process in the unlikely event that damage occurs." (*Id.*) Dominion further said that it intends to start the survey process "on or after October 27, 2014," and that the "process will take several weeks to complete." (*Id.*)

In an attempt to stop this entry onto their property, the Littles filed this action against Dominion in the Circuit Court of Augusta County, Virginia, on October 23, 2014. (*Id.* at 2–10.) They assert two claims in their verified complaint. (*Id.* at 3–5.) First, they allege that Dominion's entry would be a trespass because they have "affirmatively and in writing denied permission for [Dominion's] proposed entry," and because § 56-49.01 "does not permit [Dominion] to dig for artifacts or to clear pathways over [their] land." (*Id.* at 5.)

Second, the Littles allege that § 56-49.01 is unconstitutionally vague, and therefore void, "because [its] language describes [Dominion's] right of entry when [the] owner's permission is not received prior to the date entry is proposed, but does not address a situation where the owner affirmatively denies permission to ent[er]." (*Id.* at 6 (internal quotation marks omitted).) They further allege that the statute is impermissibly vague "because [its] language invites arbitrary and discriminatory enforcement, due to delegat[ing] to [Dominion] the task of interpreting how to

4

respond to landowners who affirmatively deny entry, as opposed to those who simply do not respond." (*Id.*)[3]

The Littles request preliminary and permanent injunctions prohibiting Dominion from entering their property, a declaration that § 56-49.01 is void for vagueness, a declaration that Dominion's entry onto the property would be a trespass, and an award of attorney's fees and costs. (*Id.* at 5–8.)

Dominion removed the case to this court and now moves to dismiss the Littles' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. Nos. 1, 5.) It argues that the Littles fail to allege sufficient facts to support a trespass claim and that § 56-49.01 is not unconstitutionally vague. (Dkt. No. 6.) In accordance with 28 U.S.C. § 2403(b), the Commonwealth has intervened to defend the constitutionality of the statute. (Dkt. No. 24.) It likewise contends that the statute is not impermissibly vague and advocates dismissal. (Dkt. No. 24.)

District Judge Michael F. Urbanski heard oral argument from the parties and the Commonwealth on February 19, 2015, and took the matter under advisement. (Dkt. No. 26.) On June 19, he transferred the case to the undersigned. (Dkt. No. 35.) Shortly thereafter, the court offered the parties and the Commonwealth a chance to reargue their positions. They declined the invitation.

---

[3] Today, the court decides another constitutional challenge to Virginia Code § 56-49.01 in *Klemic v. Dominion, Transmission, Inc.*, No. 3:14–cv–00041, slip op. at 1 (W.D. Va. Sept. 30, 2015). There, several landowners, who, like the Littles, received notices of intent to enter from Dominion, filed suit, claiming that the statute, on its face and as applied, violates the United States and Virginia Constitutions, and is thus void and unenforceable. *Id.* at 2–6. The court disagrees and holds that the statute is not facially unconstitutional. *Id.* at 12–34. It accordingly dismisses the landowners' complaint. *Id.* at 35.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Essentially, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether the plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). It must also "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

With these principles in mind, the court now turns to the Littles' claims.

## III. DISCUSSION

**A. The Littles fail to state a trespass claim.**

Because its jurisdiction over the Littles' trespass claim rests on diversity of citizenship, the court must apply the substantive law of Virginia, including its choice-of-law rules, to that claim. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In matters of tort, Virginia employs the doctrine of *lex loci*

6

*delicti*—or the law of the place of the wrong—to choice-of-law questions. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006). Here, the alleged wrong occurred in Virginia, so Virginia law governs.

To state a trespass claim under Virginia law, a plaintiff must allege sufficient facts to establish that the defendant entered onto the plaintiff's property without authorization and thereby interfered with the plaintiff's right of exclusive possession. *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994).[4] The claim accrues when there has been such an entry. *First Va. Banks, Inc. v. BP Expl. & Oil, Inc.*, 206 F.3d 404, 409 (4th Cir. 2009).

In this case, the Littles fail to allege sufficient facts to establish the most rudimentary element of a trespass claim—an entry onto their property. (*See* Dkt. No. 1-1 at 2–8.) Indeed, they allege facts showing quite the opposite: "Due to the affirmative denial of entry, [Dominion's] entry *would not be* privileged and *would* constitute a trespass and the [Littles] *will* be damaged thereby." (*Id.* at 4 (emphasis added); *see also id.* at 7 ("[Dominion's Notice states on its face that multiple entries by different crews *will* be made upon the [Littles'] land . . . ." (emphasis added).) Without facts establishing Dominion's entry onto their property, the Littles' trespass claim must fail. *See Fentress Families Tr. v. Va. Elec. & Power Co.*, 81 Va. Cir. 67, 83 (2010) (sustaining the defendants' demurrer to the plaintiffs' trespass claim because the complaint contained "no allegations that there ha[d] been a physical invasion amounting to an interference with possession.").[5]

---

[4] There are exceptions to this right of exclusive possession, as noted in *Klemic*. No. 3:14–cv–00041, slip op. at 15–21.

[5] In light of the lack of an alleged entry, the court also questions the ripeness of the Littles' trespass claim. *See Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur at all." (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Dominion does not raise the issue, though, and the court does not find it necessary to explore fuller given that the claim fails on its face.

7

In an attempt to avoid this conclusion, the Littles argue that, "[a]t this time, it is not clear [to them] whether [Dominion] has entered the land pursuant to its claim of statutory authority" and so they should be allowed to conduct discovery to determine "whether [Dominion] has already entered the land" before their trespass claim is dismissed. (Dkt. No. 20 at 7, Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss.) At this stage, however, the court is not concerned with what facts may later be discovered; it is concerned only with what facts are alleged in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations *contained in the complaint*." (emphasis added)). Accordingly, the Littles cannot remedy the factual shortcomings of their complaint today with facts they may discover tomorrow.[6]

Because the Littles do not allege sufficient facts to establish that Dominion entered their property, they fail to state a trespass claim under Virginia law.

## B. The Littles fail to state a vagueness claim.

The void-for-vagueness doctrine is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments. *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012); *Kolender v. Lawson*, 461 U.S. 352, 353 (1983). It "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox Television*, 132 S. Ct. at 2317. The Due Process Clause thus "requires the invalidation" of a statute that "fails to provide a person of

---

[6] But even if this were not so, it does not appear that discovery would save the Littles' trespass claim: Dominion has repeatedly represented that it has not entered the Littles' property and that it will not do so until it has received a court order affirming its right to enter under § 56-49.01. (*E.g.*, Dkt. No. 22 at 8 ("Dominion has not entered the Property and will not do so without a Court order.").) Moreover, § 56-49.01(D) provides, "[a]ny entry authorized by this section shall not be deemed a trespass," and this court upholds the validity of the statute insofar as it has been challenged here for vagueness and in *Klemic* for facial constitutional infirmities.

8

ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Yet the Due Process Clause does not require that a statute be drafted with "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Economic regulation, for instance, "is subject to a less strict vagueness test." *Id.* The same is true for "enactments with civil rather than criminal penalties." *Id.* at 498–99. But statutes that "threaten[] to inhibit the exercise of constitutionally protected rights"—in particular, "the right of free speech or of association"—are subject to "a more stringent vagueness test." *Id.* at 499.

Striking down a legislative enactment as "void for vagueness is a disfavored judicial exercise." *Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998). When evaluating the constitutionality of a state statute, a federal court must indulge "every possible presumption . . . in favor of the validity of [the statute]." *Mugler v. Kansas*, 123 U.S. 623, 661 (1887). "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). "Dictionary definitions and old-fashioned common sense facilitate the inquiry." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012).

Like their trespass claim, the Littles' vagueness claim fails at the outset. To state such a claim, the language of the challenged statute must itself be vague, *Indigo Room, Inc. v. City of*

*Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013), and that is simply not the case here. In support of their vagueness claim, the Littles point to the following language of § 56-49.01:

> Any . . . natural gas company . . . may make such examinations, tests, hand auger borings, appraisals, and surveys for its proposed line or location of its works as are necessary . . . , and for such purposes . . . may enter upon any property without the written permission of its owner if (a) the natural gas company has requested the owner's permission to inspect the property as provided in subsection B, (b) the owner's written permission is not received prior to the date entry is proposed, and (c) the natural gas company has given the owner notice of intent to enter as provided in subsection C.

Va. Code Ann. § 56-49.01(A).

Under no reasonable reading is this language of § 56-49.01 vague. By its plain terms, the statute gives a natural gas company the right to enter property "without the written permission of its owner," so long as the company has (1) "requested the owner's permission to inspect the property" on a certain date; (2) not received the "owner's written permission" before that date; and (3) "given the owner notice of intent to enter." *Id.* If the company satisfies these three requirements, then its entry onto property "shall not be deemed a trespass." *Id.* § 56-49.01(D).

Nothing in § 56-49.01 suggests that a landowner may thwart this right by "affirmatively and in writing den[ying]" the company's request for permission to enter his property, as the Littles allege. (Dkt. No. 1-1 at 4; *see also id.* at 4–5.) On the contrary, as Dominion and the Commonwealth argue, the phrases "without written permission of [the] owner" and "the owner's written permission is not received" clearly contemplate not only the situation where a landowner fails to respond to the request for permission to enter, but also the situation where, as here, a landowner denies it. (Dkt. No. 6 at 14–15; Dkt No. 25 at 9.) So it is of no significance to the company's right to enter under the statute whether a landowner chooses to respond to the request for permission to enter or not. As long as the company complies with the statute's notice requirements, it may enter the landowner's property.

10

The court is not alone in this reading of § 56-49.01. In 2006, the Attorney General of Virginia issued an opinion interpreting the statute, explaining in relevant part that it "addresses the potential problem of a landowner [who] fails to respond to the request for permission to enter or *who denies the natural gas company the right to enter* by providing a mechanism for such company to notify the landowner of its intent to enter upon the property." 2006 Op. Va. Att'y Gen. 195, 196 (emphasis added). The Attorney General further noted that the phrase in subsection D that entry onto property under the statute "'shall not be deemed a trespass' . . . would be meaningless should a natural gas company be required to have the *explicit* permission of a landowner to enter onto private land." *Id.* (emphasis added) (quoting Va. Code Ann. § 56-49.01(D)).

Though the Attorney General's opinion is not binding authority, it "is persuasive and entitled to considerable weight" in matters of statutory construction. *Andrews v. Shepherd*, 111 S.E.2d 279, 282 (Va. 1959); *see also Warren v. Baskerville*, 233 F.3d 204, 207 n.2 (4th Cir. 2000) (stating that, while not binding precedent, the Attorney General's interpretation of a statute is persuasive). "This is particularly so when the General Assembly has known of the Attorney General's opinion . . . and has done nothing to change it." *Beck v. Shelton*, 593 S.E.2d 195, 200 (Va. 2004). In this case, nearly ten years have passed since the Attorney General issued his opinion construing § 56-49.01. "The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view." *Id.* (quoting *Browning-Ferris, Inc. v. Commonwealth,* 300 S.E.2d 603, 605–06 (Va. 1983)).[7]

---

[7] In spite of this authority, the Littles urge the court to disregard the Attorney General's opinion that § 56-49.01 addresses the situation where a landowner denies a natural gas company's request for permission to enter. (Dkt. No. 20 at 10–12.) They argue that this opinion is nothing more than unreasoned obiter dictum because the

11

Despite the plain language of § 56-49.01 and the Attorney General's opinion, the Littles nevertheless maintain that the statute is unconstitutionally vague. They advance two principal arguments in an effort to create uncertainty in the language of the statute where none exists. Neither is convincing.

First, the Littles contend that § 56-49.01 is impermissibly vague because, in their view, its request-for-permission requirement is "wholly illusory." (Dkt. No. 20 at 14.) They submit that "[a] reasonably intelligent person would see 'request for permission' and, exercising common sense about the plain meaning of words, conclude that such a request could be denied." (*Id.*) So, they continue, "[t]he fact that the request cannot be denied proves that the mandate is entirely arbitrary in application." (*Id.*)

Not so. To begin with, as the Commonwealth notes, "request" has more than one common meaning. (Dkt. No. 25 at 10–11.) In some contexts, it implies that the person to whom the request is made has the right to say no. For example, a wedding invitation may request a person's attendance. The person receiving such an invitation would understand that he has the right to refuse to attend. But in other contexts, "request" implies no right to say no. For instance, under Federal Rule of Civil Procedure 34, a party may request certain documents and other tangible things from another party. The party receiving such a request would understand that she has no right to refuse to respond. She would appreciate the request as a demand.

---

Attorney General was asked to answer a different question—whether a natural gas company has the right to enter where the landowner has neglected to respond to its request for permission to enter. (*Id.* at 11–12.)

This contention misses the mark. "Obiter dictum"—Latin for "something said in passing"—is "[a] *judicial* comment made while delivering a *judicial* opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Black's Law Dictionary* 1240 (10th ed. 2014) (emphasis added). Obviously, the Attorney General's opinion as to the breadth of § 56-49.01 was not a judicial comment made in a judicial opinion. It therefore cannot be obiter dictum. Moreover, even if it could, the court would still be able to consider it as persuasive—which is all the case law allows anyway. And that is all the weight the court affords it.

12

The plain language of § 56-49.01 makes clear that "request" is used in the sense of a demand. The statute provides in no uncertain terms that a natural gas company "may enter upon any property *without the permission* of its owner." Va. Code. Ann § 56-49.01(A) (emphasis added). This phrase appears immediately before the phrase "if . . . the natural gas company has requested the owner's permission to inspect the property." *Id.* A landowner reading these two phrases together would understand that he has no right to refuse entry to the company, provided that it has complied with the statute's notice requirements.

That a landowner cannot deny entry to a natural gas company does not render the request-for-permission requirement "superfluous" or "a mere formality, without meaning or significance," as the Littles claim. (Dkt. No. 20 at 9–10.) Quite the contrary. As Dominion and the Commonwealth point out, the requirement serves a very important purpose in the statutory scheme: it encourages a cooperative process. (Dkt. No. 22 at 9–10; *see also* Dkt. No. 25 at 11.) By requiring the company to first reach out to the landowner before issuing a notice of intent to enter, the statute gives the two sides a chance to open a dialogue and resolve any potential issues before an entry occurs. For example, the company and the landowner can schedule the entry for a date and time convenient to both of them. The landowner can also alert the company about any hazardous conditions on his property. Moreover, the company can get the landowner's permission to "use motor vehicles, self-propelled machinery, and power equipment on [his] property." Va. Code Ann. § 56-49.01(A).

The Littles further assert that § 56-49.01 is unconstitutionally vague because, according to them, it invites "arbitrary and discriminatory enforcement, due to delegat[ing] to [a natural gas company] the task of interpreting how to respond to landowners who affirmatively deny entry, as opposed to those who simply do not respond." (Dkt. No. 1-1 at 6; *see also* Dkt. No. 20 at 10.)

13

As explained above, however, the plain language of the statute clearly covers both of these situations, authorizing the company to enter regardless of whether a landowner responds to its request for permission to enter. The statute therefore does not delegate any interpretive task to the company vis-à-vis a landowner's response (or lack thereof) to a request for permission to enter.

For these reasons, the court finds § 56-49.01 plain on its face and thus not susceptible to a vagueness challenge.[8] But even if the court thought otherwise, it would still uphold the statute as constitutional because it is not impermissibly vague even under the most stringent vagueness test.[9]

As noted above, a statute is unconstitutionally vague if it (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox Television*, 132 S. Ct. at 2317 (quoting *Williams*, 553 U.S. at 304). Section § 56-49.01 suffers neither of these infirmities. For starters, it provides an owner of ordinary intelligence fair notice of what is required of him. A natural gas company must first request his permission to enter his property. Va. Code Ann. § 56-49.01(A). He may either grant or deny that request. *Id.* If he grants it, then he may expand the scope of the company's entry, authorizing the use of motor vehicles and power equipment. *Id.*

---

[8] The court also has doubts as to the applicability of the void-for-vagueness doctrine here because, as applied to the Littles, § 56-49.01 does not define the lawfulness or unlawfulness of their speech or conduct. Many courts have held that the doctrine has no application where the challenged statute does neither. *See, e.g.*, *Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1356 (Fed. Cir. 2002) ("[A] void-for-vagueness challenge must be directed to a statute or regulation that purports to define the lawfulness or unlawfulness of speech or conduct."); *Porto v. City of Newport Beach*, No. SACV 11–0180, 2011 U.S. Dist. LEXIS 69014, at *23 (C.D. Cal. June 15, 2011) ("This ordinance plainly does not prohibit any conduct and therefore falls outside the purview of the void-for-vagueness doctrine.").

[9] The parties and the Commonwealth disagree as to the applicable vagueness test. The Littles contend that a more strict test applies because § 56-49.01 infringes on their constitutionally protected right to exclude others from their property. (Dkt. No. 20 at 12–13.) But Dominion and the Commonwealth argue that a less strict test applies because the statute is a civil statute that imposes no penalties. (Dkt. No. 22 at 14–15; Dkt. No. 25 at 16.) The court declines to decide which test is more apt here because the statute passes muster under even the strictest test.

14

But if he denies it, the company may nonetheless enter after giving proper notice. *Id.* The company must reimburse him for any actual damages caused by its entry. *Id.* § 56-49.01(D).

Moreover, § 56-49.01 sets forth a sufficient standard so as to limit the company's discretion in entering a landowner's property. First, it allows the company to enter only if "necessary (i) to satisfy any regulatory requirements and (ii) for the selection of the most advantageous location or route, the improvement or straightening of its line or works, changes of location or construction, or providing additional facilities." *Id.* § 56-49.01(A). Second, it requires the company to request permission and give notice before entering. *Id.* Third, it limits the company's entry to "examinations, tests, hand auger borings, appraisals, and surveys." *Id.* Fourth, it prohibits the use of motor vehicles and power equipment unless the company obtains prior consent. *Id.* And lastly, it obliges the company to pay for any "actual damages" caused by its entry. *Id.* § 56-49.01(D).

These detailed terms of § 56-49.01 easily satisfy both due process concerns reflected in the void-for-vagueness doctrine—fair notice and fair enforcement. The statute is therefore not unconstitutionally vague.

Because § 56-49.01 is not vague, much less unconstitutionally vague, the Littles fail to state a vagueness claim.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the Littles fail to state a trespass or vagueness claim. It will therefore grant Dominion's motion and dismiss the Littles' verified complaint.

An appropriate order will follow.

Entered: September 30, 2015.

*Elizabeth K. Dillon*
United States District Judge